# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tamilia Monique Bruton, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 8:16-1006-RMG |
| vs. ) | |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on April 5, 2017, recommending that the Commissioner's decision be affirmed. (Dkt. No. 20). Plaintiff filed objections to the R & R and the Commissioner filed a response. (Dkt. No. 23, 24). As explained below, the Court reverses the decision of the Commissioner and remands the case to the agency for further action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of all medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Under what is commonly referred to as Treating Physician Rule, the Commissioner is required to give special consideration to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's]

medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, all medical opinions must be weighed under the standards of the Treating Physician Rules, including non-treating and non-examining physicians. § 404.1527(c), (e)(1)(ii).

Where a claimant has more than one mental or physical impairment, the Commissioner is obligated to consider the combined effects of the claimant's multiple impairments "without regard to whether any such impairment if considered separately" would render the claimant disabled. 42 U.S.C. § 423(d)(2)(B). As the Fourth Circuit observed in *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989), "it is axiomatic that disability may result from a number of impairments, which taken separately, may not be disabling, but whose total effect, taken together, is to render the claimant unable to engage in gainful activity." As the *Walker* court observed, the Commissioner must "consider the combined effect of a claimant's impairments and not

fragmentize them." *Id.*

A claimant may offer relevant evidence to support his or her disability claim throughout the administrative process. Even after the Administrative Law Judge ("ALJ") renders a decision, a claimant who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. §§ 404.968, 404.970(b).[1] The new evidence offered to the Appeals Council is then made part of the record. The Social Security Regulations do not require the Appeals Council expressly to weigh the newly produced evidence and reconcile it with previously produced conflicting evidence before the ALJ. Instead, the regulations require only that the Appeals Council make a decision whether to review the case, and, if it chooses not to grant review, there is no express requirement that the Appeals Council weigh and reconcile the newly produced evidence. *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011).

As the Fourth Circuit addressed in *Meyer*, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made part of the record for purposes of substantial evidence review but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. *Meyer* held that as long as the newly presented evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has no difficulty determining whether there is substantial evidence to support the Commissioner's

---

[1] This may include medical evidence arising from treatment after the relevant time period so long as there is "a possibility of linkage" between the later medical treatment and the claimant's medical condition during the relevant time period. *Bird v. Commissioner of Social Security*, 699 F.3d 337, 341 (4th Cir. 2012). Indeed, such subsequently produced medical evidence may at times provide the "most cogent proof" of the claimant's disability during the relevant time period. *Id.*

decision. *Id.* at 707. However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* Remand is necessary because "[a]ssessing the probative value of the competing evidence is quintessentially the role of the fact finder." *Id.*

**Factual Background**

Plaintiff, then 40 years of age, filed this claim for Disability Insurance Benefits on October 24, 2012, which followed a motor vehicle accident on August 30, 2011 in which she complained of significant neck and back pain. A plain film of Plaintiff's cervical spine showed severe disc space height loss at C4-5 and C5-6. Plaintiff was diagnosed with cervical and lumbar sprain. Transcript of Record ("Tr.") 346, 351. Plaintiff thereafter complained of severe right sided radiating neck pain, sometimes relieved by injections or pain medications. Tr. 544, 571-73, 621-22, 632-33, 635-36. Plaintiff remained out of work following her automobile accident for six months and attempted to return part time in February 2012 because she needed her health insurance coverage. Plaintiff found that upon returning to her former work in a collection agency that the work-related activity aggravated her condition, and within two months she quit and has never returned. During the period in which Plaintiff attempted to work part time in 2012, her employer twice had to summon an ambulance to transport her to the hospital. Tr. 52, 545, 598 As one consulting physician noted in his evaluation, Plaintiff's condition was so aggravated by her work-related activity that "she literally could not handle the pain." Tr. 545.

Because of worsening pain, Plaintiff was seen by Dr. Robert LeBlond, a board certified pain management specialist, on March 21, 2014. Dr. LeBlond documented that Plaintiff was

experiencing worsening neck pain, which was radiating down her right arm. Dr. LeBlond diagnosed Plaintiff with "cervical radiculopathy, worsening" and ordered an MRI of the cervical spine. Tr. 621-22.

A cervical spine MRI was performed on May 16, 2014 and was interpreted by Dr. Lee A. Madeline, a board certified diagnostic radiologist. Dr. Madeline found significant cervical spine abnormalities. These included (1) a "moderately large right sided disk osteophyte complex at C4-5" which contacted and flattened the spinal cord and contributed to "rather severe right neural foraminal stenosis;" and (2) a broad based, moderately sized left sided disk osteophyte complex that contacted the spinal cord and caused "foraminal encroachment" and "moderately severe neural foraminal stenosis." Tr. 580-81. In lay language, the May 2014 cervical spine MRI demonstrated that Plaintiff had spinal cord compression at two different levels of her cervical spine, a condition which can be associated with severe local and radiating pain.

Dr. LeBlond provided responses on October 27, 2014 to two questionnaires provided to him by Plaintiff's counsel. Tr. 653-58. He opined that Plaintiff's pain would be distracting from work related activities and would likely increase with standing, walking and other work related activities. Tr. 653. Dr. LeBlond stated that in reaching his opinions he relied on the objective evidence provided by Plaintiff's MRI of the cervical spine and the subjective complaints offered by Plaintiff. Tr. 655.

Plaintiff was also evaluated in a one time disability examination on January 23, 2013 by Dr. Victor Campbell, a board certified orthopaedic surgeon. Dr. Campbell reported that Plaintiff had pain on the right side of her neck, which radiated up her skull and into her right arm. Tr. 544. Dr. Campbell noted that her condition was aggravated by lifting, prolonged sitting,

performance of household chores, and her previous job in a collection agency. Tr. 545. Dr. Campbell further documented a generally normal physical examination and only small to moderate limitations on her range of motion. He offered no opinions regarding Plaintiff's degree of impairment. Tr. 547, 550-51.

Plaintiff also asserted that she suffered from significant mental health disorders, which had been aggravated by chronic and severe pain following her 2011 motor vehicle accident. Plaintiff was referred by her primary care physician to the South Carolina Department of Mental Health for management of her mental health problems. The Department's records documented that Plaintiff had a long history of mental health issues and treatment dating from her young adult years, which had included inpatient hospitalization. Tr. 596-600. Plaintiff's psychiatric care was managed by Dr. Frank Forsthoefel, a board certified psychiatrist. Dr. Forsthoefel first saw Plaintiff on February 7, 2014 and documented that she was experiencing "continuing episodes of alternating manic and depressive episodes" and was "easily distracted." He also noted Plaintiff's complaints of cervical neck pain "stemming from accident in 2011." Dr. Forsthoefel diagnosed Plaintiff with bipolar disorder and determined her Global Assessment of Functioning ("GAF") score was 45. Tr. 594-95. A GAF score in this range can be associated with serious psychiatric symptoms or serious impairment in occupational functioning, including the inability "to keep a job." Diagnostic and Statistical Manual of Mental Disorders ("DSM IV") at 32 (1994).

Dr. Forsthoefel saw Plaintiff again on March 28, 2014 and noted "continued panic episodes" and panic attacks that required treatment in the emergency room. He opined that Plaintiff "remains totally disabled because of treatment resistant manic attacks alternating with depression." He continued his diagnosis of bipolar disorder and her GAF score remained 45. Tr.

591-92.

Plaintiff was again seen by Dr. Forsthoefel on April 30, 2014, who noted Plaintiff remained "still manic" with "irritability, agitation, pressured speech, excessive energy, etc." He observed that Plaintiff's "physical pain with neck also aggravating her mental state" and was concerned that one of her pain medications, Cymbalta, may have been "aggravating her mania." Dr. Forsthoefel continued his diagnosis of bipolar disorder and Plaintiff's GAF score of 45. Tr. 589-90.

Plaintiff's disability application record also contained a single consultive examination performed on January 3, 2013 by Bruce Kofoed, Ph.D, a licensed clinical psychologist. Dr. Kofoed made no definitive diagnosis of Plaintiff's condition following his one time examination, but indicated that diagnoses of bipolar disorder and anxiety disorder should be considered. Tr. 540-43. Additionally, the disability record contains the responses to a one page mental health questionnaire completed on November 16, 2012 by Ellen Stanback, a nurse practitioner then working for Plaintiff's primary care physician. Ms. Stanback indicated that Plaintiff's mental health condition at the time had only a "slight" effect on her ability to function in the work place. Tr. 537.

An administrative hearing regarding Plaintiff's disability application was heard before an administrative law judge ("ALJ") on October 23, 2014, at which Plaintiff and a vocational expert testified. Tr. 39-90. The ALJ issued an order on January 16, 2015 finding that Plaintiff had not engaged in "substantial gainful" employment activity since August 31, 2011, the day following her motor vehicle accident. Tr. 20. The ALJ further found that Plaintiff suffered from multiple severe impairments, including degenerative disc disease, degenerative joint disease, and affective

disorder. Tr. 20. Despite these multiple mental and physical impairments, the ALJ concluded that Plaintiff retained the residual functional capacity to perform "light" work and was not disabled under the Social Security Act. Tr. 22-33.

In reaching that conclusion, the ALJ gave "little weight" to the opinions of Dr. LeBlond, Plaintiff's treating pain management specialist physician. The ALJ stated that Dr. LeBlond's opinions were based on "claimant's subjective complaints" and there were "good reasons" to question the reliability of the claimant's subjective complaints. Tr. 30-31. In another portion of the ALJ's decision, he expressed doubt about Plaintiff's subjective complaints because they could not be "objectively verified." Tr. 29. On the other hand, the ALJ gave "some weight" to the one-time evaluation of the consulting examiner, Dr. Campbell, regarding Plaintiff's physical limitations and the in-house disability assessments performed by two physicians who relied exclusively on their review of Plaintiff's medical records and did not examine or treat Plaintiff. Tr. 30, 31.

In regard to Plaintiff's mental impairments, the ALJ gave "some weight" to assessments of in-house state agency psychologists and "considered" the opinions expressed by a nurse practitioner in a 2012 questionnaire, although recognizing that she was not an "acceptable medical source" under the Social Security Act rules and regulations. Tr. 31. In what appears to be a serious oversight, the ALJ failed to note or weigh the evaluations and opinions of Plaintiff's treating specialist psychiatric physician, Dr. Forsthoefel. As summarized above, Dr. Forsthoefel diagnosed Plaintiff with bipolar disorder, gave her a GAF score which reflected serious limitations on Plaintiff's ability to function in the workplace, and described symptoms of mania, sleeplessness, and agitation which would have obvious employment-related relevancy. Tr. 589-

90, 591-92, 594-95.

Following the issuance of the ALJ's decision in this matter, Plaintiff submitted to the Appeals Council two additional medical reports issued by Dr. Forsthoefel. One note, dated January 30, 2015, documented that Plaintiff "remains very depressed . . . with chronic pain secondary to bulging discs as well as spinal stenosis . . . ." Dr. Forsthoefel stated that surgery had been recommended for her cervical spine condition but she had no health insurance. He further noted that "she wants to work" but her "cervical neck injuries continue to disable her in her daily living because of physical factors and deterioration of her mental state with impaired concentration, memory and bipolar swings." Tr. 13. A second note submitted to the Appeals Council from Dr. Forsthoefel, dated April 17, 2015, referenced Plaintiff's problems with mania and stated that she "remains very disabled in functioning due to mood lability." Both notes included the diagnosis of bipolar disorder and GAF scores of 45. Tr. 9. The Appeals Council indicated that "we looked at" the newly submitted records and concluded they did not affect the ALJ's decision because "this new information is about a later time." Tr. 2. For reasons which are not clear, the Appeals Council failed to make the newly submitted notes part of the administrative record.

## Discussion

The decision of the Commissioner in this matter contains multiple legal errors which provide separate and independent bases for reversal and remand. The Court addresses each of these errors of law below.

1. <u>Failure to Comply with the Treating Physician Rule</u>

A fundamental premise of the Treating Physician Rule is that the opinions of all physicians will be considered, with special weight given to the opinions of the claimant's treating physicians. Among the factors to be considered include the physician's treating and examining history with the claimant and whether the physician is a specialist. All opinions offered by physicians, including non-treating and non-examining physicians, are required to be evaluated under the provisions of the Treating Physician Rule. §§ 404.1527(c)-(e).

Under this standard, the decision of the ALJ contains significant deficiencies. First, the ALJ failed to reference or weigh the opinions of Plaintiff's treating psychiatrist, Dr. Forsthoefel. As summarized above, these opinions are based upon the doctor's treating and examining relationship with Plaintiff and are in the area of his practice specialization. Dr. Forsthoefel's opinions raise serious questions about the Plaintiff's capacity to work in light of her severe mental health and physical impairments. The Court can envision no justification for the ALJ's failure to consider Dr. Forsthoefel opinions and this oversight, standing alone, requires reversal of the Commissioner's decision and remand.

Second, the ALJ's decision to accord "little weight" to Plaintiff's treating pain medicine physician, Dr. LeBlond, is based on the erroneous finding that Dr. LeBlond's opinions were based solely on Plaintiff's subjective complaints. Tr. 30-31. Dr. LeBlond was asked in a questionnaire the objective support for his opinions, and he explicitly referenced the May 2014 cervical spine MRI. Tr. 655. As previously noted, this MRI documents the presence of cord compression at two different levels in Plaintiff's cervical spine. Tr. 580-81. This error provides a separate and independent basis for reversal and remand of the Commissioner's decision. On

remand, the Commissioner is directed to assess and weigh Dr. LeBlond's opinions again in light of both the objective and subjective evidence available to him.

> 2. Failure to Consider the Combined Effects of the Claimant's Physical and Mental Impairments

The ALJ, at Step Four of the five step sequential process, first analyzed the "combination of physical impairments" of the Plaintiff, and concluded that while the physical impairments "would reasonably preclude her from performing any type of strenuous work," they would not render her unable to perform "a range of light work activity." Tr. 23. The ALJ then analyzed Plaintiff's mental impairments, finding that while she had "some mental limitations," they did not render her "unable to perform a range of simple, nonpublic work." *Id.*

The ALJ never considered at Step Four the *combined* effect of Plaintiff's physical and mental disorders. This is not a small or insignificant error under these circumstances. Plaintiff's physical impairments arose out of significant cervical spine abnormalities and produced chronic and severe pain. Her mental impairments, per Dr. Forsthoefel's records, have resulted in wildly fluctuating moods between mania and depression, aggravated by her chronic pain. The ALJ's consideration of the mental and physical impairments separately fragmentized the impairments, violating the basic premise of the Fourth Circuit's decision in *Walker v. Bowen* and the statutory mandate under 42 U.S.C. § 423(d)(2)(C) to consider in combination all of a claimant's impairments. The Commissioner's decision is reversed and on remand the combined effect of Plaintiff's physical and mental disorders should be determined.

> 3. The Failure of any Fact Finder to Weigh and Reconcile New and Material Evidence Offered for the First Time to the Appeals Council

Plaintiff submitted to the Appeals Council two reports of office visits with Dr.

Forsthoefel subsequent to the ALJ's decision. These reports provided new and material evidence concerning the degree and significance of Plaintiff's mental impairments and the relationship between her chronic cervical spine pain and worsening mental health status. Tr. 9-10, 13-14. This new and material evidence conflicted with other evidence credited by the ALJ. The Appeals Council declined to consider and weigh this new and material evidence on the basis that it concerned "a later time." Tr. 2. It is well settled in the Fourth Circuit that medical records from a later time period may be probative and relevant to establishing disability in an earlier time period if there is "linkage" between the later treatment and the impairments at issue in the claimant's disability claim. *Bird*, 699 F.3d at 340-41. There was certainly "linkage" between the earlier reports of Dr. Forsthoefel in the record and these later provided reports to the Appeals Council, and it was error under *Meyer v. Astrue* not to weigh these new opinions and reconcile them with other opinions in the record credited by the ALJ. The decision of the Commissioner is reversed. On remand, the Commissioner is directed to make these records presented first to the Appeals Council a part of the record and to weigh and reconcile them with other opinion evidence in the record.

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g).

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

April 24, 2017
Charleston, South Carolina